IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY LATOUR, a minor, JOHN A. LATOUR, and DENISE LATOUR, as parents and natural guardians of Anthony Latour and in their individual capacity,<br><br>　　　　Plaintiffs,<br><br>  -vs-<br><br>RIVERSIDE BEAVER SCHOOL DISTRICT,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.  05-1076<br>)<br>)<br>)<br>)<br>) |

AMBROSE, Chief District Judge.

## MEMORANDUM OPINION

This action arises out of the disciplinary action taken against Anthony Latour ("Anthony"), a student at Riverside Beaver Middle School. On May 5, 2005, Defendant, Riverside Beaver School District, suspended Anthony from school, and then on May 17, 2005, expelled him for two years because of four rap songs that he wrote and recorded in his home over a two-year period. None of these songs and recordings were brought to school by Anthony. *Id.* at ¶14. The four songs consist of the following:

> 1.  A song written in 2003 that mentions another middle school student (Jane Smith);
>
> 2.  The first track on a CD recorded in November 2004, titled "Murder, He Wrote";
>
> 3.  A battle rap song with John Doe titled "Massacre"; and

> 4. Another battle rap song he wrote and uploaded onto his personal Internet website titled "Actin Fast ft. Grimey."

On July 17, 2005, Defendant's School Board ratified the expulsion decision.

Anthony Latour and his parents (collectively referred to as "Plaintiffs") filed a Motion for Preliminary Injunction seeking an order from this Court enjoining Defendant from expelling Anthony, restraining Defendant from banning Anthony from attending school sponsored events and from being present on school grounds after hours, and enjoining Defendant from imposing any other sanctions against Anthony for expressions, or as retaliation for his expressions.  (Docket No. 2).  A hearing on the Motion for Preliminary Injunction was held on August 18, 2005.  The issue is now ripe for review.

The following factors must be weighed in determining the propriety of a preliminary injunction:

> a. The likelihood of success on the merits;
>
> b. The possibility of harm to the non-moving party if relief were granted;
>
> c. The probability of irreparable injury to the moving party in the absence of relief; and
>
> d. The public interest.

*Alessi v. Commonwealth of Pennsylvania Dept. of Public Welfare,* 893 F.2d 1444, 1447 (3d Cir. 1990).  In First Amendment cases, the key element is the first element: the likelihood of success on the merits. *Sypniewski v. Warren Hills Regional Bd. of Educ.,*

307 F.3d 243, 252 (3d Cir. 2002). With regard to the first element, the likelihood of success on the merits, the burden is on Defendant to show that its action in expelling Anthony based on the four songs was constitutional. At the hearing, Defendant attempted to meet this burden by showing that the songs were either "true threats" or that the songs caused a material and substantial disruption to the school day.

"True threats" are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals...." To determine if a statement is a true threat, I will consider the speaker's intent, how the intended victim reacted to the alleged threat, whether it was communicated directly to its victim, whether the threat was conditional, and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence. *Virginia v. Black,* 538 U.S. 343, 359 (2003); *J.S. ex rel. H.S. v. Bethlehem Area School Dist.*, 807 A.2d 847, 858 (Pa. 2002). In considering these factors, I must examine them in context. *Black,* 538 U.S. at 359; *Watts v. United States*, 394 U.S. 705, 708 (1969).

The evidence at the hearing shows that Anthony's songs were written in the rap genre and that rap songs are "just rhymes" and are metaphors. Thus, while some rap songs contain violent language, it is violent imagery and no actual violence is intended. (Preliminary Injunction Hearing testimony of Bakari Kitwana; Expulsion hearing testimony of John Doe).

Furthermore, there is no evidence that Anthony communicated these songs

directly to Jane Smith, John Doe, or Defendant. Rather, they were published on the Internet or sold in the community.

There is no evidence from Jane Smith, herself, that she felt threatened. Mrs. Smith, Jane's mother, did not testify that Jane was threatened by the song, but rather that she was humiliated and broken hearted. (Defendant's Ex. A, Ex. A, pp. 138-140). Furthermore, I find that John Doe was not threatened by "Massacre." As he admitted, he did not think Anthony's song was a threat, but that it was just a "bluff" and "a question of, you know, flexing your lyrical muscle...." (Defendant's Ex. A, Ex. A, pp. 152-153).

Moreover, there is no evidence that Anthony had a history of violence.

Additionally, I find Defendant's argument that the songs were true threats is weakened by the fact that it failed to do any type of its own investigation, regardless of the police involvement, from the end of March of 2005, until the time of the expulsion hearing on May 17, 2005. Defendant claims that it feared Anthony might cause imminent harm to Jane Doe, John Smith, and or the school, in general. Yet, it did not search Anthony's locker to determine whether he had any types of weapons, did not refer Anthony to counseling, did not talk to Anthony or his parents, did not remove John Doe from school, and did not talk to Jane Smith. Therefore, based on the testimony at the hearing and the exhibits presented, I find that there is a likelihood that Plaintiffs will prevail on the issue of whether the songs were true threats.

I next turn to whether the songs caused a material and substantial disruption

to the school day or whether there was a specific fear of substantial disruption. *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 508-09 (1969). Mr. Girting testified that Anthony's songs did not cause any disruptions prior to his expulsion. (Defendant's Ex. A, Ex. A, pp. 126-132). There was no evidence that copies of the songs were sold in school or otherwise distributed in school, no fights in the hallways about the songs, and no evidence that the classroom instruction was disrupted. The only argument Defendant has is that the disruption consists of (1) withdrawal of students, and (2) wearing of t-shirts. I find that Defendant's argument that it fears that it may lose up to three students (Jane Smith and the two Doe boys) due to Anthony's songs without merit. With regard to Jane Smith, Anthony's song was merely "the straw that broke the camel's back." *Id.* at p. 141. There obviously were a multitude of issues involving Jane Smith and why she decided to leave the District. *Id.* at pp. 141-42. John Doe was kept out of school by his mother, but not after she read Anthony's song. Rather, John Doe was kept out of school because of the fear that her son might be hurt in school as a result of Anthony's arrest, and "everything else." *Id.* at p. 95. Additionally, students wearing t-shirts stating "Free Accident" and students talking about Anthony's expulsion, are not because of Anthony's songs, but a result of the punishment by Defendant, and even if they were a result of the songs, these incidents do not rise to the level of a substantial disruption. Thus, based on the testimony at the hearing and the exhibits presented, I find that there is also a likelihood that Plaintiffs will prevail on the issue of whether the songs caused a material and substantial disruption or whether there was a

5

specific fear of substantial disruption.

Because Defendant has not demonstrated that the songs constituted true threats or caused a material and substantial disruption, Plaintiffs have prevailed in demonstrating a likelihood of success on the merits. Consequently, I find that the first factor weighs in favor of granting the preliminary injunction.

With regard to the second factor, the possibility of harm to Defendant, I find that there were no true threats and that the disruptions (or feared disruptions) identified by Defendant were not substantial and not attributable to Anthony's songs. (Defendant's Ex. A, Ex. A, pp. 126-132). Consequently, this factor weighs in favor of granting the preliminary injunction

As to the third and fourth elements, the probability of irreparable injury and the public interest, unquestionably, the loss of First Amendment freedoms, even for a minimal amount of time, constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Furthermore, there is a strong public interest in protecting First Amendment rights guaranteed by the United States Constitution. Thus, the third and fourth factors weigh in favor of granting a preliminary injunction.

As a result, I find that the requirements for the issuance of a preliminary injunction have been met.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY LATOUR, a minor, JOHN A. LATOUR, and DENISE LATOUR, as parents and natural guardians of Anthony Latour and in their individual capacity,<br><br>        Plaintiffs,<br><br>  -vs-<br><br>RIVERSIDE BEAVER SCHOOL DISTRICT,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>  Civil Action No.  05-1076<br>)<br>)<br>)<br>) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **23rd** day of August, 2005, after a Preliminary Injunction Hearing and for the reasons set forth above, it is ORDERED that Defendant, Riverside Beaver School District are enjoined and restrained as follows:

    1. From expelling Anthony; and

    2. From banning Anthony from attending school sponsored events and from being present on school grounds after hours.

BY THE COURT:


/s/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge